1

2

3

4

5

6

7

8          IN THE UNITED STATES DISTRICT COURT

9          FOR THE EASTERN DISTRICT OF CALIFORNIA

10   GARY RUSSELL BOUSAMRA,

11          Petitioner,              No. 2:10-cv-1718 KJM KJN P

12   vs.

13   GARY SWARTHOUT, Warden,

14          Respondent.             FINDINGS AND RECOMMENDATIONS

15   _____/

16   I.  Introduction

17          Petitioner is a state prisoner proceeding without counsel with an application for a

18   writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner claims that the California Board

19   of Parole Hearings (hereafter the Board) applied Marsy's Law in violation of the Ex Post Facto

20   Clause.  In his next two claims, petitioner alleges that his federal constitutional right to due

21   process was violated by a 2009 decision of the Board to deny him a parole date.  After review of

22   the record, this court finds the petition should be denied.

23   II.  Standards for a Writ of Habeas Corpus

24          Federal habeas corpus relief is not available for any claim decided on the merits in

25   state court proceedings unless the state court's adjudication of the claim:

26   ////

1

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under section 2254(d)(1), a state court decision is "contrary to" clearly established United States Supreme Court precedents if it applies a rule that contradicts the governing law set forth in Supreme Court cases, or if it confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a different result.  Early v. Packer, 537 U.S. 3, 7 (2002) (citing Williams v. Taylor, 529 U.S. 362, 405-06 (2000)).

Under the "unreasonable application" clause of section 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case.  Williams, 529 U.S. at 413.  A federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  Id. at 412; see also Lockyer v. Andrade, 538 U.S. 63, 75 (2003) (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'") (internal citations omitted).

The court looks to the last reasoned state court decision as the basis for the state court judgment.  Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).  Where the state court reaches a decision on the merits, but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under section 2254(d).  Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003);

1  Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000) ("Independent review of the record is not

2  de novo review of the constitutional issue, but rather, the only method by which we can

3  determine whether a silent state court decision is objectively unreasonable."); accord Pirtle v.

4  Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).  When it is clear that a state court has not reached

5  the merits of a petitioner's claim, or has denied the claim on procedural grounds, the AEDPA's

6  deferential standard does not apply and a federal habeas court must review the claim de novo.

7  Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003); Pirtle, 313 F.3d at 1167.

8  III.  Petitioner's Claims

9       A.  Marsy's Law

10       Petitioner contends that the Board's application of  "Marsy's Law" (adopted by

11  the voters pursuant to Proposition 9, the "Victims' Bill of Rights Act of 2008:  Marsy's Law") to

12  delay for three years his next parole hearing, violated the Ex Post Facto Clause of the United

13  States Constitution.  Under the statute as it existed prior to the enactment of "Marsy's Law,"

14  indeterminately-sentenced inmates, like petitioner,[1] were denied parole for one year unless the

15  Board found, with stated reasons, that it was unreasonable to expect that parole could be granted

16  the following year, in which case the subsequent hearing could be extended up to five years.  Cal.

17  Penal Code § 3041.5(b)(2) (2008).  However, at his 2009 parole hearing, petitioner was subject

18  to the terms of the amended statute, which authorizes denial of a subsequent parole hearing for a

19  period up to fifteen years.  Cal. Pen. Code, § 3041.5(b)(3) (2010).  The shortest interval that the

20  Board may set is three years, applied to petitioner herein (Dkt. No. 1 at 10), based on a finding

21  that the prisoner "does not require a more lengthy period of incarceration . . . than seven

22  additional years," Cal. Pen. Code, § 3041.5(b)(3)(C).

23       Petitioner asserts that application of the extended deferral period violates the Ex

24  Post Facto Clause because it increases the risk that petitioner will suffer longer punishment than

25

26       [1]  Petitioner is serving an indeterminate sentence of 15-years-to-life with the possibility of parole, based on a 1986 conviction for second degree murder.

3

he would have received under the prior statute, because it changed the presumption that a person

sentenced to an indeterminate sentence would be considered for parole annually.  (Dkt. No. 1 at

25.)

On February 23, 2010, the Court of Appeal for the Fourth Appellate District of

California, issued the last reasoned opinion addressing this claim:

> Bousamra is serving a life sentence.  There is no evidence that he
> necessarily would have been released earlier had he been afforded
> a hearing in one or two years, rather than three.  It is conceivable
> that the Board could conclude after three years that Bousamra still
> is not suitable for parole.  Nevertheless, if Bousamra feels that he
> has developed sufficient insight and appropriate parole and relapse
> prevention plans before the expiration of the three-year period
> leading up to his next parole hearing, the newly amended Penal
> Code section 3041.5, subdivision (b)(4) affords the Board
> discretion to entertain an earlier hearing.

(Dkt. No. 1 at 43.)

The Constitution provides that "No State shall . . . pass any . . . ex post facto

Law."  U.S. Const. art. I, § 10.  A law violates the Ex Post Facto Clause if it:  (1) punishes as

criminal an act that was not criminal when it was committed; (2) makes a crime's punishment

greater than when the crime was committed; or (3) deprives a person of a defense available at the

time the crime was committed.  Collins v. Youngblood, 497 U.S. 37, 52 (1990).  The Ex Post

Facto Clause is also violated if:  (1) state regulations have been applied retroactively to a

defendant; and (2) the new regulations have created a "sufficient risk" of increasing the

punishment attached to the defendant's crimes.  Himes v. Thompson, 336 F.3d 848, 854 (9th Cir.

2003).  Not every law that disadvantages a defendant is a prohibited ex post facto law.  In order

to violate the Clause, the law must essentially alter "the definition of criminal conduct" or

increase the "punishment for the crime."  Lynce v. Mathis, 519 U.S. 433, 441-42 (1997); Souch

v. Schaivo, 289 F.3d 616, 620 (9th Cir. 2002).

California Penal Code section 3041.5 has been amended several times since the

date of petitioner's conviction to allow for longer periods of time between parole suitability

1   hearings.  Ex post facto challenges to those amendments have all been rejected.  See e.g.

2   California Dep't of Corrections v. Morales, 514 U.S. 499, 509 (1995) (1981 amendment to

3   Section 3041.5, which increased maximum deferral period of parole suitability hearings to five

4   years did not violate the Ex Post Facto Clause because it simply altered the method of setting a

5   parole release date and did not create a meaningful "risk of increasing the measure of punishment

6   attached to the covered crimes"); Watson v. Estelle, 886 F.2d 1093, 1097-98 (9th Cir. 1989) (not

7   a violation of the Ex Post Facto Clause to apply Section 3041.5(b)(2)(A) to prisoners sentenced

8   to life imprisonment prior to the 1977 implementation of California's Determinate Sentence

9   Law); Clifton v. Attorney General Of the state of California, 997 F.2d 660, 662 n.1 (9th Cir.

10  1993) (same); see also Garner v. Jones, 529 U.S. 244, 249 (2000) (upholding Georgia's change

11  in the frequency of parole hearings for prisoners serving life sentences, from three to eight years).

12          Recently the Ninth Circuit overturned a district court decision granting

13  preliminary injunctive relief to plaintiffs in a class action seeking to prevent the Board from

14  enforcing the amended deferral periods established by Marsy's Law.  Gilman v. Schwarzenegger,

15  ___F.3d___, 2011 WL 198435 (9th Cir., Jan. 24, 2011).  The court found it unlikely that

16  plaintiffs would succeed on the merits of their underlying challenge premised on the Ex Post

17  Facto Clause.  The court initially compared and contrasted Marsy's Law with existing Supreme

18  Court precedent:

19          Here, as in Morales and Garner, Proposition 9 did not increase the
            statutory punishment for any particular offense, did not change the date of
20          inmates' initial parole hearings, and did not change the standard by which
            the Board determined whether inmates were suitable for parole.  However,
21          the changes to the frequency of parole hearings here are more extensive
            than the change in either Morales or Garner.  First, Proposition 9 increased
22          the maximum deferral period from five years to fifteen years.  This change
            is similar to the change in Morales (i.e., tripled from one year to three
23          years) and the change in Garner (i.e., from three years to eight years).
            Second, Proposition 9 increased the minimum deferral period from one
24          year to three years.  Third, Proposition 9 changed the default deferral
            period from one year to fifteen years.  Fourth, Proposition 9 altered the
25          burden to impose a deferral period other than the default period. . . .
            Neither Morales nor Garner involved a change to the minimum deferral

26  ////

5

1          period, the default deferral period, or the burden to impose a
           deferral period other than the default period.
2

3  Gilman, 2011 WL 198435, at * 5.  The Ninth Circuit found these distinctions insignificant due to

4  the availability of advance parole hearings at the Board's discretion (sua sponte or upon the

5  request of a prisoner, the denial of which is subject to judicial review), reasoning that, "as in

6  Morales, an advance hearing by the Board 'would remove any possibility of harm' to prisoners

7  because they would not be required to wait a minimum of three years for a hearing."  Id. at *6,

8  quoting Morales, 514 U.S. at 513.  The court concluded that plaintiffs had failed to demonstrate a

9  significant risk that their incarceration would be prolonged by application of Marsy's Law, and

10 thus found that plaintiffs had not established a likelihood of success on the merits of their ex post

11 facto claim.

12          In addition to these preliminary conclusions by the Ninth Circuit that Marsy's

13 Law does not appear to violate the Ex Post Facto Clause, at least one district court has dismissed

14 a petitioner's challenge to the law on the ground that it improperly duplicates the class action

15 claim still pending on the merits in Gilman.  See e.g. Bryant v. Haviland, 2011 WL 23064, *2-

16 5,15 (E.D. Cal., Jan. 4, 2011).  That court noted that petitioner therein, as here, appears to be a

17 member of the Gilman class "of prisoners convicted of murder and serving a sentence of life with

18 the possibility of parole with at least one parole denial . . . challeng[ing] the state procedures

19 denying class members parole as well as their deferred parole suitability hearings following a

20 finding of parole unsuitability."  Id. at *5.  Relying on established precedent precluding a

21 member of a class action from seeking, in an individual action, equitable relief that is also sought

22 by the class, see e.g. Crawford v. Bell, 599 F.2d 8990, 892-93 (9th Cir. 1979), the court

23 dismissed petitioner's claim.

24          In light of these cases, the state court's rejection of petitioner's first claim for

25 relief was neither contrary to, nor an unreasonable application of, controlling principles of United

26 ////

                                            6

1   States Supreme Court precedent.  Therefore, petitioner is not entitled to relief in this action on

2   his ex post facto claim.

3                      B.  <u>Due Process</u>

4               In his next two claims, petitioner contends that the Board's 2009 decision was not

5   supported by relevant, reliable evidence, or a rational nexus that he currently poses an

6   unreasonable risk of danger, and that the decision was arbitrary and capricious.  All of these

7   arguments constitute a single claim that petitioner's federal constitutional right to due process

8   was violated by a 2009 decision of the Board to deny him a parole date.

9               The Due Process Clause of the Fourteenth Amendment prohibits state action that

10  deprives a person of life, liberty, or property without due process of law.  A litigant alleging a

11  due process violation must first demonstrate that he was deprived of a liberty or property interest

12  protected by the Due Process Clause and then show that the procedures attendant upon the

13  deprivation were not constitutionally sufficient.  <u>Kentucky Dep't of Corrections v. Thompson</u>,

14  490 U.S. 454, 459-60 (1989).

15              A protected liberty interest may arise from either the Due Process Clause of the

16  United States Constitution "by reason of guarantees implicit in the word 'liberty,'" or from "an

17  expectation or interest created by state laws or policies."  <u>Wilkinson v. Austin</u>,  545 U.S. 209,

18  221 (2005) (citations omitted).  The United States Constitution does not, of its own force, create

19  a protected liberty interest in a parole date, even one that has been set.  <u>Jago v. Van Curen</u>,

20  454 U.S. 14, 17-21 (1981); <u>Greenholtz v. Inmates of Neb. Penal</u>, 442 U.S. 1, 7 (1979) (There is

21  "no constitutional or inherent right of a convicted person to be conditionally released before the

22  expiration of a valid sentence.").  However, "a state's statutory scheme, if it uses mandatory

23  language, 'creates a presumption that parole release will be granted' when or unless certain

24  designated findings are made, and thereby gives rise to a constitutional liberty interest."

25  <u>Greenholtz</u>, 442 U.S. at 12; <u>see also</u> <u>Board of Pardons v. Allen</u>, 482 U.S. 369, 376-78 (1987) (a

26  ////

1    state's use of mandatory language ("shall") creates a presumption that parole release will be

2    granted when the designated findings are made.).

3           California's parole statutes give rise to a liberty interest in parole protected by the

4    federal due process clause.  Swarthout v. Cooke, 562 U.S. ___ (2011), No. 10-333, 2011 WL

5    197627, at *2 (Jan. 24, 2011).  In California, a prisoner is entitled to release on parole unless

6    there is "some evidence" of his or her current dangerousness.  In re Lawrence, 44 Cal.4th 1181,

7    1205-06, 1210 (2008); In re Rosenkrantz, 29 Cal.4th 616, 651-53 (2002).  However, in

8    Swarthout the United States Supreme Court held that "[n]o opinion of [theirs] supports

9    converting California's 'some evidence' rule into a substantive federal requirement."  Swarthout,

10   2011 WL 197627, at *3.  In other words, the Court specifically rejected the notion that there can

11   be a valid claim under the Fourteenth Amendment for insufficiency of evidence presented at a

12   parole proceeding.  Id. at *3.  Rather, the protection afforded by the federal due process clause to

13   California parole decisions consists solely of  the "minimal" procedural requirements set forth in

14   Greenholtz, specifically "an opportunity to be heard and . . . a statement of the reasons why

15   parole was denied."  Swarthout, at *2-3.

16          Here, the record reflects that petitioner was present at the 2009 parole hearing,

17   that he participated in the hearing, and that he was provided with the reasons for the Board's

18   decision to deny parole.  (Dkt. No. 10-1 at 76-126.)  According to the United States Supreme

19   Court, the federal due process clause requires no more.  Accordingly, this claim should be

20   denied.

21   IV.  Conclusion

22          For all of the above reasons, the undersigned recommends that petitioner's

23   application for a writ of habeas corpus be denied.

24          Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a

25   writ of habeas corpus be denied.

26   ////

1    These findings and recommendations are submitted to the United States District

2 Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-

3 one days after being served with these findings and recommendations, any party may file written

4 objections with the court and serve a copy on all parties.  Such a document should be captioned

5 "Objections to Magistrate Judge's Findings and Recommendations."  If petitioner files

6 objections, he shall also address whether a certificate of appealability should issue and, if so, why

7 and as to which issues.  A certificate of appealability may issue under 28 U.S.C. § 2253 "only if

8 the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C.

9 § 2253(c)(3). Any response to the objections shall be filed and served within fourteen days after

10 service of the objections.  The parties are advised that failure to file objections within the

11 specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>,

12 951 F.2d 1153 (9th Cir. 1991).

13 DATED: February 14, 2011

14

15

16 KENDALL J. NEWMAN
   UNITED STATES MAGISTRATE JUDGE

17 bous1718.157

18

19

20

21

22

23

24

25

26